UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-cr-30018-MGM-1 |
| | ) |
| MATTHEW MURRAY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION FOR
DISCOVERY
(Dkt. No. 60)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Defendant Matthew Murray is charged by indictment with aiding and abetting the distribution and possession with intent to distribute 100 kilograms or more of marijuana in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), aiding and abetting the possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 2, 924(c), and aiding and abetting money laundering, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(B)(1) (Dkt. No. 2). Defendant made discovery requests by an October 18, 2018 letter (Dkt. No. 51). The government replied by letter of November 1, 2018 (Dkt. No. 54). Defendant then moved for discovery of material he alleged that the government had not produced (Dkt. No. 60) and the government responded (Dkt. No. 62). At the hearing on Defendant's motion, the court requested supplemental briefing on whether Defendant could identify legal authority supporting the proposition that the government should be required to compel a cooperating source ("CS") to produce his cellular telephone for a forensic examination by Defendant. Defendant filed a supplemental memorandum which included a motion for the issuance of a subpoena under Fed.

1

R. Crim. P. 17(c) ("Rule 17(c)") ordering the CS to produce his cellular telephone for a forensic examination (Dkt. No. 71). The government opposed Defendant's request for the issuance of a subpoena *duces tecum* (Dkt. No. 74). After hearing from the parties on April 8, 2019, Defendant's motions for discovery and for the issuance of a Rule 17(c) subpoena to the CS are DENIED for the reasons that follow.

II. BACKGROUND

In connection with the charges against Defendant, a search warrant was executed at Defendant's residence in Pittsfield, Massachusetts by members of a Drug Enforcement Administration ("DEA") task force. To establish probable cause for the search, the affidavit in support of the search warrant relied, in part, on cellular telephone communications between Defendant's cell phone and the personal cell phone of a CS, Jonathan Giedrowicz. The contents of text messages derived from screenshots from the CS's cell phone were included in the search warrant affidavit.

III. DISCUSSION

By his discovery motion and supplemental memorandum, Defendant seeks the following: (1) "the entire informant file and all debriefings of Giedrowicz by any federal, state or local law enforcement agency" (2) "all communications between [Giedrowicz] and any investigator or prosecutor assigned to this case;" (3) assurance that the government has produced all text messages between Giedrowicz and Defendant; and (4) an order for the production of a forensic image of Giedrowicz's cell phone including an order "directing the government to preserve, obtain and produce the data and metadata essential for the analysis of text messages and any other communications allegedly between [Giedrowicz] and [D]efendant . . . that the government intends to introduce at trial" (Dkt. No. 51 ¶¶ 3, 5, 12; Dkt. No. 60; Dkt. No. 71 at 1). As an

alternative to the government's production of a forensic image of Giedrowicz's cell phone including the requested metadata, Defendant seeks a subpoena issued pursuant to Rule 17(c) "directing the [CS] to produce his cellular telephone for inspection and analysis by a defense forensic expert." (Dkt. No. 71 at 1). Each of Defendant's requests is addressed below. "Before making rulings on the individual requests contained in the [m]otion, some preliminary remarks are necessary to establish the discovery landscape." *United States v. Geas*, No. 08-CR-30029-MAP, 2009 WL 4430100, at *1 (D. Mass. Nov. 30, 2009).

    A.    <u>Legal Standards</u>

Defendant relies on *Brady v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States,* 405 U.S. 150 (1972), and Fed. R. Crim. P. 16(a)(1)(E) to support his motion (Dkt. No. 60 at 1 nn.1 & 2).

        1.    *Brady v. Maryland* and *Giglio v. United States*

"In a line of cases beginning with *Brady,* the Supreme Court has made clear that the prosecution in a criminal case has an affirmative duty to disclose information in its possession that is favorable to the defendant and material to the question of guilt or punishment." *United States v. Tsarnaev*, Criminal Action No. 13-10200-GAO, 2013 WL 6196279, at *1 (D. Mass. Nov. 27, 2013) (citing *Kyles v. Whitley,* 514 U.S. 419, 432–33 (1995)). *See also United States v. Prochilo,* 629 F.3d 264, 268 (1st Cir. 2011). "Evidence is 'material' for these purposes only if there is a reasonable probability that it could affect the outcome of the trial." *Tsarnaev,* 2013 WL 6196279, at *1 (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). This information, otherwise known as "*Brady* material," "falls into one of two categories — that which tends to be more or less directly exculpatory in that it casts doubt on the defendant's guilt, and that which is indirectly exculpatory in that it tends to impeach the reliability of other

3

prosecution evidence." *Id.* Defendant's right to the disclosure of favorable evidence, however, does not "create a broad, constitutionally required right of discovery." *Bagley*, 473 U.S. at 675 n.7. *See also United States v. Agurs,* 427 U.S. 97, 111 (1976) (the prosecutor does not have a "constitutional duty routinely to deliver his entire file to defense counsel").

"*Giglio* material" is related to *Brady* material. *Giglio* requires the government to disclose evidence affecting the credibility of a witness, such as promises, rewards, or inducements to testify, even if the evidence is not inherently exculpatory. *See Giglio,* 405 U.S. at 153-54; *Napue v. Illinois,* 360 U.S. 264, 269 (1959); *United States v. Bulger,* 816 F.3d 137, 153 (1st Cir. 2016).

2. Fed. R. Crim. P. 16(a)(1)(E)

Federal Rule of Criminal Procedure 16(a) outlines the government's basic disclosure obligations. "[U]nlike the Government's *Brady* obligation to disclose exculpatory evidence . . . Rule 16 requires the disclosure of inculpatory and exculpatory evidence alike." *United States v. Poulin,* 592 F. Supp. 2d 137, 143 (D. Me. 2008) (citation omitted) (citing *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998)). Federal Rule of Criminal Procedure 16(a)(1)(E) states, in relevant part:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; [or] (ii) the government intends to use the item in its case-in-chief at trial . . . .

Fed. R. Crim. P. 16(a)(1)(E). "The defendant, as the moving party, bears the burden of showing materiality[;]" that is, "'some indication' that pretrial disclosure of the information sought 'would . . . enable[] the defendant significantly to alter the quantum of proof in his favor.'" *United States v. Goris*, 876 F.3d 40, 44-45 (1st Cir. 2017), *cert. denied*, 138 S. Ct. 2011 (2018) (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)). "If . . . a defendant's discovery request is

grounded in a speculative theory, a district court's decision to deny that request is not an abuse of discretion." *Id.*

### B. Defendant's Specific Discovery Requests

1. All notes, reports, and other documents related to Giedrowicz that are in the custody or control of any law enforcement agency.

Defendant's October 18, 2018 discovery letter included a request for "any notes or writings . . . memorializing any communications between anyone at the FBI and anyone at DEA and/or the Task Force concerning [the CS,] Giedrowicz" (Dkt. No. 51 ¶ 3). Defendant indicated that, in January 2019, he received an FBI report with attachments that disclosed potential impeachment material about Giedrowicz that previously had not been disclosed (Dkt. No. 60 at 2). Defendant now seeks all similar information regarding the CS that is in the custody or control of any federal, state, or local law enforcement agency (Dkt. No. 60 at 2). In response, the prosecutor indicated that he made additional inquiries of the DEA case agent and the FBI who reported that all material regarding Giedrowicz within the possession, custody, or control of the prosecution team had been produced (Dkt. No. 62 at 1).[1]

The prosecutor reported that the government has satisfied its discovery obligation to produce exculpatory information concerning Giedrowicz by inspecting the DEA agent's file and turning over all exculpatory evidence in "the government's possession, custody, or control" (Dkt. No. 62 at 1). Fed. R. Crim. P. 16(a)(1)(E). *See Kyles,* 514 U.S. at 437 ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Castro*, 502 F. Supp. 2d 218, 224 (D.P.R. 2007) ("Evidence 'within [the government's] possession' includes exculpatory

---

[1] At the first hearing on Defendant's discovery motion, the prosecutor indicated that he would produce Massachusetts State Police reports.

information in the possession of any agency that participated in the investigation of the crime charged.") (quoting *Kyles*, 514 U.S. at 438). Based on the prosecutor's representation, Defendant's request for additional material is denied. *See Tsarnaev*, 2013 WL 6196279, at *5 ("[The court] accept[s] [the government's] representation in the absence of any specific indication to the contrary."). To the extent Defendant seeks material that is not in the custody or control of the prosecution team, the request is denied. *See United States v. Poulin*, 592 F. Supp. 2d 137, 142 (D. Me. 2008) ("The Government has no duty to produce to [defendant] or permit him to inspect and copy 'evidence outside of its control,' nor can the Court compel it to do so.") (quoting *United States v. Hughes,* 211 F.3d 676, 688 (1st Cir. 2000)); *United States v. DeCologero*, Criminal Action No. 01-10373-RWZ, 2013 WL 3728409, at *5 (D. Mass. July 11, 2013) (the prosecution is not required to produce *Brady* material from other government agencies that are not part of the "prosecution team or any of its agents") (citing *United States v. Chalmers*, 410 F. Supp. 2d 278, 287-90 (S.D.N.Y. 2006)). However, the prosecution has an ongoing obligation to comply with Rule 16. *See* Fed. R. Crim. P. 16(c); LR 116.7.

        2.      Communication between Giedrowicz and law enforcement officers or agents of the prosecution team.

Defendant requested disclosure of "any and all communications between Giedrowicz, or any other [CS] or cooperating witness, and *any* federal, state, or local law enforcement agent, prosecutor or officer, including but not limited to text messages, email, voice messages, notes or any other electronically stored information stored in any medium from which information can be obtained either directly or, if necessary, after translation by the government into a reasonably usable form" (Dkt. No. 51 ¶ 5) (emphasis original). The prosecutor indicated: "[t]he government has turned over the texts. The CS did not communicate by email, and the government does not have any voice messages from the CS" (Dkt. No. 54 ¶ 5). Notwithstanding

the government's representations, Defendant's supplemental brief claims, based "upon information and belief," that the government has not "turned over every text or other communication between Giedrowicz and law enforcement officers or agents of the prosecution team" and asks that the requested material be produced "forthwith" (Dkt. No. 71 at 2).

Giedrowicz's communications with law enforcement officers and other members of the prosecution team are statements made by a "prospective government witness" under Fed. R. Crim. P. 16(a)(2), which limits the information the government is required to disclosure under Rule 16(a)(1). *See United States v. Suarez,* Criminal Action No. 09-932 (JLL), 2010 WL 4226524, at *4 (D.N.J. Oct. 21, 2010); Fed. R. Crim. P. 16(a)(2). In pertinent part, Rule 16(a)(2) says: "this rule [does not] authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [the Jencks Act]." Fed. R. Crim. P. 16(a)(2). "The Jencks Act ordains that '[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.' 18 U.S.C. § 3500(b)." *United States v. Marrero-Ortiz,* 160 F.3d 768, 775-76 (1st Cir. 1998) (alteration in original). "The purpose of the Jencks Act was to preserve the defendant's right to obtain access to materials which would aid in impeaching government witnesses." *United States v. Houlihan*, 937 F. Supp. 65, 71 (D. Mass. 1996). Because the prosecutor's representations indicate that in advance of trial, he has produced the CS's communications, which would qualify as "statements" under the Jencks Act, and because Defendant does not support his claim that some statements have not been produced, his request for Giedrowicz's additional statements to the prosecution team is denied. *See United States v. Cadden,* Criminal No. 14-103630-RGS, 2015 WL 13683816, at *1

(D. Mass. Dec. 4, 2015) (the government's pretrial disclosure of "nonexculpatory Jencks Act material" is voluntary); *Tsarnaev,* 2013 WL 6196279, at *5; 18 U.S.C. § 3500(e); Fed. R. Crim. P. 26.2(f).

> 3. Confirmation that the government has produced all text messages between Giedrowicz and Defendant.

In his supplemental memorandum, Defendant claimed that the government has failed "to confirm that all texts between Giedrowicz and [Defendant] have been produced" (Dkt. No. 71 at 2). In October 2018, Defendant requested disclosure of

> copies of all statements, summaries of interviews, tape recordings, reports of statements, the agents' notes, and/or any memorialization of statements allegedly made by . . . [D]efendant to any law enforcement agency or officer at any time either before or after his arrest.

(Dkt. No. 51 ¶ 8). The government indicated that it had "already produced" this requested material (Dkt. No. 54 ¶ 8). Because Defendant did not identify a basis for a belief that the government has failed to disclose all text messages between Giedrowicz and Defendant that are in the prosecution team's possession, custody, or control, the court accepts the government's representation as satisfying this request.

> 4. An order directing the government to preserve, obtain, and produce a forensic image of Giedrowicz's cellular phone.

Defendant requested "a forensic image of any mobile telephone utilized by Giedrowicz during the investigation of . . . [D]efendant" (Dkt. No. 51 ¶12). The government denied the request on the ground that it would result in the production of personal information that was not relevant to the case, but indicated that it would respond to specific requests for data from Defendant (Dkt. No. 54 ¶ 12). In his discovery motion, Defendant stated that he was aware that Giedrowicz was involved in criminal activity in Chicopee while he was cooperating with the government's investigation of Defendant and was seeking a forensic image of Giedrowicz's cell

8

phone in order to obtain additional impeachment evidence (Dkt. No. 60 at 6). The government's response included its representation that it did not have possession, custody, or control of Giedrowicz's personal cell phone (Dkt. No. 62 at 7). This discovery request is extraordinarily intrusive on a non-party's privacy interests. Because the phone is not in the government's possession, custody, or control (Dkt. No. 62 at 7), and because Defendant has not pointed to any case law authorizing the court to order a CS in a criminal case to turn over his personal cell phone for forensic examination by a defendant (Dkt. No. 71 at 4), the court denies Defendant's request for an order to produce the phone for forensic imaging. *See United States v. Josleyn*, 206 F.3d 144, 154 (1st Cir. 2000) ("While prosecutors may be held accountable for information known to police investigators, we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interests." (citation omitted)); *Hughes,* 211 F.3d at 688 ("the government has no duty to produce evidence outside of its control"); Fed. R. Crim. P. 16(a)(1)(E).

      5.      Issuance of a Rule 17(c) subpoena for Giedrowicz's cell phone in order to obtain a forensic image including metadata concerning text messages related to Defendant's case.

      a.      Forensic Inspection and Analysis

Anticipating that Giedrowicz's cell phone was not in the government's possession, custody, or control, Defendant's supplemental memorandum asked the court to issue a Rule 17(c) subpoena for production of Giedrowicz's cell phone prior to trial in order for Defendant to perform a forensic "inspection and analysis," including retrieval of metadata (Dkt. No. 71 at 1, 4-5). *See* Fed. R. Crim. P. 17(c)(1). Defendant seeks a forensic image of Giedrowicz's cell phone to obtain text messages, including deleted text messages, "the call history, a contact list, internet

browser information, and photos and videos (both present and deleted)" to determine whether Giedrowicz engaged in other criminal activity during the relevant time (Dkt. No. 71 at 3, 4).

"Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). In order to obtain production of an object prior to trial, a defendant must show:

> (1) that the [requested object will produce material that is] evidentiary and relevant; (2) that [it is] not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon,* 418 U.S. 683, 699–700 (1974) (footnote omitted). "In short, the Court explained that the [moving party] was required to clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *United States v. LaRouche Campaign*, 841 F.2d 1176, 1179 (1st Cir. 1988) (citing *Nixon,* 418 U.S. at 700). *See also Stern v. United States,* 214 F.3d 4, 17 (1st Cir. 2000) (materials requested with a subpoena *duces tecum* must be relevant, admissible and specific).

A forensic copy of Giedrowicz's personal cell phone raises privacy concerns. *See Riley v. California*, 573 U.S. 373, 403 (2014) ("Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'") (citation omitted).[2] Acknowledging the privacy interests at stake in forensic imaging of personal electronic devices, courts in civil cases have denied requests similar to Defendant's. *See, e.g., John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008) ("The orders at issue

---

[2] The court is unaware of any authority for Defendant's apparent contention that law enforcement officers have an obligation to require a CS to use a government-issued cell phone (Dkt. No. 71 at 2, 4), and Defendant has not identified any such authority.

here compel the imaging and production of various state-owned and privately owned computers and electronic devices, and that media will almost certainly contain confidential state or private personal information that is wholly unrelated to the . . . litigation."); *Lewis v. Archer Daniels Midland Co.*, CIVIL ACTION NO. 17-14190, 2018 WL 6591999, at *2 (E.D. La. Dec. 14, 2018) ("'Courts hesitate to authorize direct access to an opposing party's electronic storage device.'") (citation omitted); *Ramos v. Hopele of Fort Lauderdale, LLC,* CASE NO. 17-62100-CIV-MORENO/SELTZER, 2018 WL 1383188, at *2-3 (S.D. Fla. Mar. 19, 2018) (plaintiff's privacy interest in her cell phone outweighed the defendant's need for a forensic examination of the phone); *John Crane Grp. Corp. v. Energy Devices of Tex., Inc.*, CIVIL ACTION NO. 6:14-CV-178, 2015 WL 11112540, at *1 (E.D. Tex. Oct. 30, 2015) (in denying the motion to reconsider the denial of plaintiff's motion to compel the forensic examination of defendants' employee's cell phones, the court found that "[t]he utility of permitting a forensic examination of personal cell phones must be weighed against inherent privacy concerns."); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12cv2472-AJB (KSC), 2013 WL 5212013, at *2 (S.D. Cal. Sept. 13, 2013) ("Given the legitimate privacy and other interests at issue, absent 'specific, concrete evidence of concealment or destruction of evidence,' courts are generally cautious about granting a request for a forensic examination of an adversary's computer.") (quoting *Advante Int'l Corp. v. Mintel Learning Tech.,* No C 05-01022 JW (RS), 2006 WL 1806151 at *2 (N.D. Cal. June 29, 2006)).

The government also argued that Defendant's request for a Rule 17(c) subpoena should be denied because his request for unlimited access to Giedrowicz's cell phone to obtain impeachment evidence was overbroad (Dkt. No. 74 at 2). *Nixon,* 418 U.S. at 700. "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of

trial." *Id.* at 701. *See United States v. Santiago-Lugo,* 904 F. Supp. 43, 46 (D.P.R. 1995) ("[T]he production of documents allowed by [Rule 17(c)] is intimately related to the attendance of the witness."). The First Circuit, however, recognizes that the pretrial disclosure of impeachment evidence by means of a Rule 17(c) subpoena is committed to "the sound discretion of the district court." *LaRouche Campaign,* 841 F.2d at 1180.

Although Giedrowicz will be a critical government witness whose impeachment will be important to the defense, Defendant's request for the issuance of a Rule 17(c) subpoena in order to obtain a forensic image of Giedrowicz's cell phone is doomed by its lack of specificity. To the extent Defendant seeks information related to Giedrowicz's alleged criminal activity in Chicopee, the information is available from another source that does not raise the same privacy concerns, that being the file of the Chicopee Police Department. The court has indicated its willingness to issue an order requiring such a disclosure by the Chicopee Police Department. "The Court cannot authorize subpoenas to reveal [hypothetical] evidence because doing so would wrongly convert Rule 17 into a discovery tool." *United States v. Pereira*, 353 F. Supp. 3d 158, 161 (D.P.R. 2019). Defendant has failed to support his contention that Giedrowicz engaged in illegal activity of which he has not been advised (Dkt. No. 71 at 3). Rather, Defendant's request for the production of Giedrowicz's cell phone in order to conduct a forensic analysis of the entire phone is akin to a request for "any and all documents," which suggests an "'impermissible fishing expedition.'" *United States v. Cartagena-Albaladejo,* 299 F. Supp. 3d 378, 386 (D.P.R. 2018) (quoting *United States v. Morris,* 287 F.3d 985, 991 (10th Cir. 2002)). *See United States v. Ventola*, Criminal No. 15-10356-DPW, 2017 WL 2468777, at *2 (D. Mass. June 7, 2017) (defendant's failure to seek specific evidence combined with "[t]he breadth of the subpoenas . . . establishes that defendant intended the subpoenas to operate as a general fishing

expedition."); *United States v. Mariano*, No. CR 12-061-01-ML, 2013 WL 866907, at *2 (D.R.I. Mar. 7, 2013) ("In describing the documents sought, a subpoena must refer to specific documents or, at least, to specific kinds of documents. Requesting entire files instead of specific documents indicates a fishing expedition.") (citation omitted); *United States v. Manghis,* Criminal Action No. 08cr10090-NG, 2010 WL 349583, at * (D. Mass. Jan. 22, 2010) (defendant's request for "'any and all documents relating to the . . . interpretation and implementation of certain regulatory provisions is overbroad and amounts to little more than a fishing expedition."). Defendant's hope that a forensic image of Giedrowicz's cell phone will produce evidence favorable to the defense is insufficient to support the issuance of the requested subpoena. *See United States v. Shinderman*, 232 F.R.D. 147, 150 (D. Me. 2005) ("The 'mere hope that some exculpatory material might turn up' is insufficient.") (quoting *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir. 1980)); *United States v. Noriega,* 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) ("If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused."). Consequently, Defendant's motion for the issuance of a Rule 17(c) subpoena ordering Giedrowicz to preserve the contents of his cell phone and to produce it for forensic imaging and analysis is denied.[3]

    b.  Metadata from Giedrowicz's cell phone.

---

[3] Although Defendant also sought a forensic examination of Defendant's cell phone in order to obtain communications between Giedrowicz and investigators that have not been disclosed and in order to challenge the authenticity of the text messages that were procured by the government (Dkt. No. 71 at 3, 4-5), these grounds do not satisfy the *Nixon* criteria. The government has represented that it has disclosed all communications between Giedrowicz and investigators (Dkt. No. 54 ¶ 5), and the rules of evidence provide the means for challenging the authenticity of electronic communications, including text messages. *See* Fed. R. Evid. 901(a).

As a subset of Defendant's request for a forensic image of Giedrowicz's cell phone, Defendant seeks the metadata associated with Giedrowicz's text messages that are related to the case (Dkt. No. 51 ¶ 12; Dkt. No. 60 at 6; Dkt. No. 71 at 3). Metadata is "embedded 'data about data,'" *United States v. Breton,* 740 F.3d 1, 7 n.8 (1st Cir. 2014), "that describes the 'history, tracking, or management of an electronic document.'" *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.,* 255 F.R.D. 350, 354 (S.D.N.Y. 2008) (quoting *Williams v. Sprint/United Mgmt. Co.,* 230 F.R.D. 640, 646 (D. Kan. 2005)). Without additional explication, Defendant claims that he needs the metadata to determine when text messages were sent or received, whether the messages were incoming or outgoing, the phone numbers of the sender and recipient, and the location of the phone when communicating by text message (Dkt. No. 60 at 4; Dkt. No. 71 at 3).[4] The government objected to the production of metadata on the ground that it lacked relevance (Dkt. No. 62 at 4; Dkt. No. 74 at 3).

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[] and . . . that fact is of consequence in determining the action." Fed. R. Evid. 401. Defendant is charged with aiding and abetting marijuana trafficking, unlawful possession of firearms, and money laundering (Dkt. No. 2). The relevance of the content of Giedrowicz's communications that are related to Defendant's alleged criminal activity is undisputed. The prosecutor represented that he has produced the "pertinent" text messages that the government obtained from Giedrowicz's personal cell phone, which contained the sender and recipient, the contents of the messages, and their dates and times (Dkt. No. 54 ¶ 12; Dkt. No.

---

[4] The government questioned whether metadata would reveal the geolocation of the cell phone (Dkt. No. 62 at 4; Dkt. No. 74 at 3). Defendant did not provide authority for his assertion in the form of an expert's affidavit or demonstrate the relevance of the cell phone's location when it sent or received text messages.

14

62 at 3, 4). Defendant fails to demonstrate a "sufficient likelihood" that the metadata associated with those text messages is "relevant to the offenses charged in the indictment." *Nixon,* 418 U.S. at 700. Potential relevance is insufficient to warrant the issuance of a subpoena. *See United States v. Marchisio,* 344 F.2d 653, 669 (2d Cir. 1965), *overruled on other grounds by United States v. Mandanici,* 205 F.3d 519 (2d Cir. 2000); *United States v. Berger,* 773 F. Supp. 1419, 1425 (D. Kan. 1991). If Defendant is seeking the metadata to obtain additional fodder for impeachment of Giedrowicz, he fails to establish a link between the undisclosed metadata and Giedrowicz's credibility. Defendant's conclusory allegations of relevance are not sufficient to sustain his burden of demonstrating the need for the metadata that he pursues. *See United States v. Eden,* 659 F.2d 1376, 1381 (9th Cir. 1981); *Burger,* 773 F. Supp. at 1425. Accordingly, weighed against the privacy interests implicated in Defendant's request, his request for the issuance of a Rule 17(c) subpoena to gather metadata is denied.

IV. CONCLUSION

For the above-stated reasons, Defendant's motion for discovery (Dkt. No. 60) is DENIED.

It is so ordered.

Dated: May 6, 2019                                             /s/ Katherine A. Robertson
                                                               KATHERINE A. ROBERTSON
                                                               UNITED STATES MAGISTRATE JUDGE